Our last case, which is Futrell v. United States v. Longstreet. Good morning, may it please the court. I am Laura Longstreet, and I represent the plaintiff appellant John Lee Futrell. The mission always came first to Mr. Futrell, and his life was about the mission. He was prepared to give his life for his fellow service members in all the 24 years that he served. Today, he likely wouldn't be able to even obtain a security clearance due to the financial dire situation created by the government's negligence. The district court erred in holding that it lacked subject matter jurisdiction, and by entering a dismissal under the Ferris Doctrine. A judgment granting a motion to dismiss should not be affirmed unless it appears beyond doubt that the plaintiff can prove no set of facts of his claim that would entitle him to relief. Unfortunately, that is not what happened here. Did he receive treatment for his diabetes? I would assume that he went to a primary physician and obtained some sort of treatment. The issue that we have is not that he obtained and was diagnosed with diabetes while he was an active service member. Our contention is that his injury occurred following that diagnosis. We're not arguing that his injury was diabetes, and I think that's where the district court and the government misses the point. What was his injury? His injury was economic, in that he nearly lost his home to foreclosure. He had a vehicle repossessed. He was attempting to obtain a business loan, and his credit rating had dropped so low. He went 13 months without pay. Was your client ever represented by counsel at the administrative level? No, Your Honor, he was not. He handled that on his own. I see. So, do you know whether he could have brought a writ of mandamus? Because it was for the government to produce a decision, given the fact that the government apparently had dragged its heels as bad as it had? I am not entirely clear on that. I did review the documents that he submitted as part of the administrative claim. He had a letter, a decision written back to him, and it's very unclear as to what extent of investigation was actually done. This was while the administrative process was going on? Correct, Your Honor. Thank you. The District Court actually reasoned that by Mr. Futrell taking advantage of the processes that he had to go through following his diagnosis of diabetes, being the Physical Evaluation Board and the Medical Evaluation Board, by taking advantage of those processes, that his injury was service-related and subject to the Ferris Doctrine. As I stated just a minute ago, Mr. Futrell and the government both missed the mark. The argument and the injury of which Mr. Futrell complains is not the fact that he was diagnosed with diabetes. And diabetes, in fact, is something that can affect each and every one of us at any point in our life, and it has very little correlation with whether... I think everybody was clear on what the injury was. The judge said the injury was the negligence in timely processing his disability issue. The government dragged its feet, or the military dragged its feet, as Judge Ripple said. That's the claim. And the judge was not misapprehending that, nor does the government in response misapprehend that. Nobody construes this as a claim for development of diabetes. I agree with you to a certain extent, but what comes to the question is how the district court and how the government interprets whether or not his injury was service-related. It's a case of judicial interpretation. It's clearly service-related, because the claim is that the military dragged its feet in processing his disability issue. That's necessarily service-related. He's on active status, and then he's on reserve status, and all the while this claim is being processed, or the disability discharge issue is being processed, and it takes too long, so he suffers these financial consequences as a result. That's clearly related to his military status. Just because something is related to military status does not automatically lead to the interpretation and conclusion that it is barred under the Ferris Doctrine. That is just one of the factors that a court can look at, is whether or not Mr. Futrell was active duty status, whether or not he was under command or different combat command decisions and subject to military discipline. That is not a conclusory opinion that because he was active status and because the injury was perpetrated against him by members of the military does not automatically presume that it is service-connected and barred by the Ferris Doctrine. But did he have an opportunity for a remedy within the military system? Our argument is that the compensation that he was awarded has still not made him a whole person. So he did get some military compensation. He got his back pay. So there were 13 months that Mr. Futrell went without any pay at all. He was in a reserve status during that time, am I right? A portion of that time, Your Honor. So the timeline goes that his diagnosis of diabetes happened in January 2011. He began the medical evaluation, physical evaluation board processes shortly thereafter. While still on active duty? While still on active duty. And was paid as a captain during that time? Leading up until I believe it was... Until release from active duty. The release from active duty was in October 2011. There was a gap of time between the release from active duty and then from when he was notified that the military no longer wanted his services. The refrad, as they call it, the release from active duty was in October. That's the difficult period right there, am I right? Correct, Your Honor, it is. And then in December, he was notified by the military, we no longer need your services. You know, cease and desist doing any and everything for the military. You're no longer under our command. We don't need you because of your diabetes. It was from that date forward that started the 13 months that Mr. Pudrell... Now during that period of time, excluding the question of whether he was able to work physically, there were no regulations that said he could not work. He was at that point in the civilian world, am I right? I am not exactly clear on that, Your Honor. He was still on reserve status when they released him from active duty in October. A lot of people working in this building. But my point is, was he able to work physically during that period? I would assume that he was able to. I know that there was also a disconnected injury that's not related to the suit that he under... He had a neck and a back injury, so there was a period of time that he was injured following the diagnosis of diabetes that might have limited his ability to go out and get a job. Was that injury while still on active duty? I believe it happened during reserve status. And is not military related? It did happen while he was a military member. I think he was doing... It probably was active duty because he was doing some kind of combat training for other officers and he got the neck and the back injury. As far as the suit goes, it's not related, but I think it might have inhibited his ability to go out and seek other employment at that time. Mr. Futrell did sign up for the military, but he did not sign up for the personal injury that happened to him as a process. He served several combat missions in Iraq and reasonably so received injuries and took that as a part of the job and the duty. But what happened in this case was the military did not follow their own rules and the regulations that were specifically put into place to prevent this specific sort of injury happening to Mr. Futrell and other veterans. The injury being what? The injury being economic and emotional. Yes, he didn't sign up for that portion of it. He was okay with bullets flying at him, but he did not expect to be hurt by those in this manner. Yes, he found out he had diabetes. It was the negligence following that determination that caused the most injury to him. And the dispositive question is whether or not... Negligence about his treatment for diabetes? You say negligence that followed the diabetes? There's regulations and directives that the Army are supposed to take once they have determined that somebody is unfit for active duty. And so following those steps, them not taking the actions that they were supposed to is why he went 13 months without pay. Now, he did receive that back payback, but the damage was done in those 13 months that he had no means to financially support himself or his family. Right, and those duties are owed to him only because of his status as a member of the military. So the claim is based on the military relationship between your client and the U.S. government. And that's squarely within the Ferris Doctrine. Well, I don't think that we're here at all today if Mr. Futrell weren't a member of the Army, but I think on the converse side of that, if he were a civilian employee and going through workforce development perhaps for unemployment compensation, if unemployment dragged their feet and didn't get their head in the game and processed the payments for 13 months and somebody loses their car, their home, is emotionally distressed, loses their life-term insurance policies... I'm not questioning whether there's a basis for a negligence claim. I'm talking about the source of the duty here. The source of the duty is military in nature. That is correct, but my... That brings this squarely within the Ferris Doctrine. My response to that, Your Honor, though, is that in part of the analysis of whether or not the Ferris Doctrine bars someone from bringing a claim under the Federal Tort Claims Act is if that person were not in the Army and were injured in the same way, would it be compensable through the court? And so what I am saying to you is if Mr. Futrell was... That's just a standard FTCA analysis. The Ferris Doctrine asks about the relationship. And he's clearly making this claim for disability benefits based on his status as a member of the military. And he received those disability benefits, but not for... Right, and so any delay in receipt of those benefits to the extent that it's actionable at all as negligence, the source of that duty is the military relationship between your client and the U.S. government. Well, during the 13-month period, did he ever complain to the Army, you know, you're not... He actually started from the lowest chain of command and he went all the way up to writing the President of the United States. It's well documented. Did he have any legal remedy with the government rather than just complaining? Could he have filed something with... Not that I'm aware of. He had to do the administrative claim first, which he did, and then we filed in district court after that. The Army was sitting on it. He had no legal remedy. Suppose the Army was still sitting on it. He'd be stuck, Your Honor. Would he? That seems odd that there's no internal military procedure. You're owed money and they're dragging their heels and you'd think you could complain to someone or file some kind of motion, you know, for... And you're saying there's no remedy of that sort? Did he try? Did he ask a lawyer or someone? Yes, he did. As far as I am aware, Mr. Futrell exhausted all of those remedies before coming to me, and I think that he went to numerous military lawyers as well. And no one would help him or could help him? That's correct. No one would. Thank you. Ms. Longstreet, we'll hear from Mr. Wood. Mr. Wood, let's start right there, if we may. Sure. Could he have filed a mandamus to get the Army to get to work on his petition? I admit that I don't know the nature of mandamus in that context. It would run up against... It wouldn't be an FTCA claim, obviously, so the Ferris doesn't apply. I still think there would be some issue with court involvement in military personnel decisions. This gentleman against the Secretary of the Army. Mandamus. Get that board to act. Make a decision. Sure. I think that's plausible. I will say this. One thing that hasn't been mentioned, and first of all, all indications from the record and anything else I've ever heard are that Mr. Futrell is a talented guy who served impeccably. The indications in the record, which is scant at the motion to dismiss stage, are that delays were at least, in some part, caused by indications from the board that his own submitted LODs were incomplete. I'm not saying that it's my opinion, or even necessarily true that they were incomplete, but that's part of the record. The Army does provide counsel in some cases, doesn't it? It does, and there's nothing in the record to indicate why or how any decision in that regard was made here. The record is, of course, clear, Your Honor, that there were delays. That what? That there were delays, but the record is not clear as to why those delays happened. Is there a procedure where you can set aside the mandamus, that's a separate issue, but is there some strictly military procedure where if you owe money and it's not being paid in a timely way, you can complain, file a complaint. You can complain to the officers. But is there actually a procedure, not can you say something, but is there, do they tell you, you know, if you have a problem with getting paid or something, you fill out a form X, Y, Z and send it in? Well, the declaration of Von Ocks and the record indicates that procedures would go through him and that I think the record is clear enough that Mr. Futrell was aware of Mr. Von Ocks' oversight of this. And so, as with other matters in the military, to answer most directly, I'm not aware of a specific regulation providing for documentation procedures, etc., with date certain and all that. But he would have been aware of the people in charge of this decision and I just want to come back full circle a little bit to reiterate a point that Judge Sykes made but also just using the wording that he uses to characterize his claims, even here before this court at oral argument, that is, the military did not follow military rules. And if that's the nature of the case, whatever unfortunate events there might be that cause a delay, which we don't know what they are at this stage, FAERS applies. And I don't know how the circumstances with hindsight can unwind the application of FAERS here because we're here under the FTCA or under an exception to the FTCA. And I also wanted to clarify two other quick points. There was a reference to a gap of time of a month between his release and his actually being taken off active duty. He was, at the most, seven days after his October 2011 release told about how to apply for incapacity pay. And maybe seven days is a long time but it seems to me that that's relatively short. That did not wait until December. And I think he started that process relatively quickly. Again, it was delayed but he did receive compensation. And the statement and argument was, and I don't know if this is exactly how it's put in the complaint, but that in December he was told, you are no longer under the Army's command. I don't think there's any way to see that as accurate given that he was still under Title 32 reserve status. So he was under military command. That he resigned near the last... And therefore, because of his status under Title 32, he was under military command. He was still. He was not in combat. He was not in combat. He was still a member of the military. The FTCA covers that in its language. My understanding of the rationale for the Ferris Doctrine is that the FTCA is limited to civilian context and that this belongs in the jurisdiction of the military. And the military has its own courts and its own systems for enforcing regulatory FUBARs like this one. To use another famous military term. The first rationale is the federal relationship. And here, because he had many, there were compensatory schemes available to him and because he knew about them and because he availed himself of them, there were a web of contacts that made that federal relationship multifaceted. Which I think makes this a peak Ferris case in some regards, not an ebb case. And with that, again, with no interest at all in maligning Mr. Futrell, I would just ask the court to affirm under Ferris. There's just one little question. Does the diabetes have any significance in this case other than the fact that it precipitated his withdrawal from the military? I think that is the only significance. There's no indication that there are treatment issues. Thank you very much. Ms. Longstreet, do you have anything further? Thank you. To respond briefly, Mr. Futrell did everything that he possibly could to try to facilitate and move along this process. There was no regulatory scheme other than complaining to your chain of command that things are not moving as smoothly as they are supposed to be doing. And it is well documented over and over everything that Mr. Futrell did in order to try to get this process to go along. He was aware of the people that were in charge. The people that were in charge did not do what they were supposed to do and did not help him in the way that they were supposed to help him. He was advised, I can give you the exact date, that Mr. Futrell was first advised to apply for the incapacitation pay. That was October 14, 2011. It was December 15, 2011 that he was notified his services were no longer wanted in the military. And to recap, that did not mean that he was no longer a member of the military. That is not what I was presenting in my argument. The argument is that there have been military members still listed in both active and reserve status who have been able to proceed under the Ferris Doctrine as an exception to the Federal Tort Claims Act. And in fact, one of the rationales of the court stating that it doesn't want to allow these sort of suits and that Ferris is a bar to them is that it will cause the courts to have an adverse impact on military discipline. In fact, this ruling would encourage military effectiveness by creating solidarity in the Army's own regulations. Are you saying there is no internal military administrative procedure that he could have invoked? Because there are a lot of lawyers and there is military discipline. Presumably this is meted out in some orderly way. A lot of lawyers in the Army. He did fully exhaust the administrative remedies available to him prior to filing the suit. So I'm a little bit confused as to what the question is asking. Because he did exhaust all of those administrative remedies prior to filing the suit in district court. And what would be a typical administrative remedy that he exhausted? So the administrative decision was that Ferris doctrine barred his complaint. No, no. I'm thinking about his effort to get paid promptly. What could he do to accelerate payment? I don't know if there was anything different that Mr. Futrell could have done aside from what he did, which was go up the chain of command and ask who do I need to talk to? What paperwork do I need to fill out? You're saying there's no administrative law judges and the like that he could have invoked? I'm not aware of that, Your Honor. Okay, well thank you very much. Thank you. Ms. Longstreet and Mr. Wood. And the court will be in recess.